UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


JOHN QUINCY ADAMS And ALEAN ADAMS, On Behalf
Of Themselves And All Others Situated                                    PLAINTIFFS

V.                                                    CIVIL ACTION NO. 3:20-cv-469-HTW-LRA

PEARL RIVER VALLEY WATER
SUPPLY DISTRICT                                                          DEFENDANT


CLASS ACTION
COMPLAINT FOR DECLARATORY,
INJUNCTIVE AND EQUITABLE RELIEF


COME NOW plaintiffs, on behalf of themselves and all others similarly situated, by and through counsel of record, pursuant to Fed. R. Civ. P. 23 and file their Class Action Complaint, and allege with personal knowledge as to their own actions, and upon information and belief as to those of others, as follows:

JURY TRIAL REQUESTED

1. This civil action seeks redress for the Pearl River Valley Water Supply District's (PRVWSD) deprivation under color of statute, regulation, official policy, custom, usage, pattern and practice of rights, privileges, and immunities secured to the named plaintiffs and proposed Class Members by the Fifth and Fourteenth Amendments to the United States Constitution. This civil action also seeks declaratory, injunctive and equitable relief including incidental monetary damages flowing from PRVWSD's actions, conduct, violations and deprivations of the named plaintiffs and Class Members' federally protected constitutional

rights caused by the PRVWSD.

## I. JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction under 28 U.S.C. § 1331; 28 U.S.C. §1343(3) and (4) to secure declaratory relief authorized by 28 U.S.C. §§2201 and 2202 and equitable relief authorized by 42 U.S.C. Sections 1983 and 1988 and the Fifth and Fourteenth Amendments to the United States Constitution to enforce civil rights and deprivations under the color of state law and to secure equitable and other prospective declaratory and injunctive relief for ongoing violations of federal law under the Supremacy Clause.

3. This Court has original jurisdiction over this action pursuant to 28 U. S. C. § 1331; 42 U. S. C. Section 1983; pursuant to 28 U. S. C. Section 1343(a)(3) and (4) to enforce civil rights deprivation under color of state law and to secure equitable and other prospective declaratory and injunctive relief for ongoing violations of federal law under the Supremacy Clause.

4. Plaintiffs request this Court exercise supplemental jurisdiction over any pendent jurisdiction state law claims, pursuant to 28 U. S. C. § 1367(a).

5. This Court has personal jurisdiction over the defendant PRVWSD because the PRVWSD and its board of directors are headquartered and/or transact business in and have significant contacts within the Northern Division of the Southern District of Mississippi.

6. Venue in federal cases lies in the district in which any defendant resides or in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U. S. C.

Section 1391(b)(1). Venue in this district and division of Court is proper under 28 U. S. C. Section 1391(b) because the PRVWSD's principal place of business and nerve center is located in Madison County in the Northern Division of the Southern District of Mississippi and the conduct and transactions at issue in this civil action arose in this division of this district.

## II. PARTIES

7. (a) Plaintiffs John Quincy Adams and Alean Adams, are husband and wife and are adult resident citizens of Fannin, Rankin County, Mississippi.  John Quincy Adams was born on January 6, 1935; Alean Adams was born on September 15, 1935; they were married on November 9, 1953 and are life long residents of the Fannin Community near the Ross Barnett Reservoir.

8. By Warranty Deed dated November 1, 1960 from his father Joseph L. Adams, John Q. Adams and Alean Adams, wife were bona fide resident householders actually living and maintaining a residence on the two (2) acres of real property taken by the PRVWSD, under threat of condemnation who conveyed their two (2) acres of land situated in Section 33, T7N, R3E in Rankin County, Mississippi to the PRVWSD "subject to the limitations and restrictions provided in Chapter 197 of the law of the State Mississippi". A copy of the November 1, 1960 Warranty Deed from Joseph L. Adams to John Quincy Adams and Alean Adams is attached hereto as Exhibit 1.

9. By Warranty Deed dated October 5, 1960, Joseph L. (Joe) and Ruth Adams, wife were bona fide resident householders actually living and maintaining a residence on the 118 acres of real property taken by deed, under threat of condemnation conveyed 118 acres

situated in Section 33, T7N, R3E in Rankin County, Mississippi to the PRVWSD "subject to
the limitations and restrictions provided in Chapter 197 of Laws of Mississippi 1958". A copy
of the October 5, 1960 Warranty Deed to Joseph L. Adams and Ruth Adams is attached
hereto as Exhibit 2.

10. The named plaintiff John Q. Adams is also one of the fifteen (15) named
beneficiaries under the Last Will and Testament of his father Joseph Lee Adams, deceased,
who departed this life on October 22, 1977. The named beneficiaries under Joseph Lee
Adams's Last Will and Testament and the named plaintiffs seek to recover statutory
reversionary property rights pursuant to Miss. Code Ann. § 51-9-121 (f) (Rev. 1995)
formerly owned by Joseph Lee Adams, deceased and transferred to PRVWSD, by deed under
threat of condemnation. Joseph Lee Adams' named beneficiaries under his Last Will and
Testament are his children and grandchildren namely: Bernice Adams Grant, Louise Adams
Ervin McWright, deceased,  Joe Willie Adams, deceased, John Q. Adams, Glenn R. Adams,
Spencer Lee Adams, Lonnie Earl Adams, Johnnie May Adams Anderson, Rayfield Adams,
Virdian Adams Thompson, Robbie Joe Singleton, Forrestine Harvey Thurman, Betty Jean
Craig, Keith Buckhalter and Andrew Buckhalter. A certified copy of the Rankin County
Chancery Court July 17, 1981 Decree Admitting Will to Probate and Appointing Co-
Executor, The Last Will and Testament of Joseph Lee Adams and the January 28, 1985
Decree Waiving First and Final Accounting, Discharging Co-Executors and Closing Estate in
Civil Action No. 19, 895 are attached hereto as Exhibit 3.

11. Under Mississippi law, PRVWSD is a political subdivision organized and existing

under state law akin to a municipality, county, school district and board of levee commission, but is not a state agency. See generally, Leland v. Mississippi Board of Registration, 841 F.Supp. 192, 195-96 (N.D. Miss. 1993); McDonald v. Board of Mississippi Levee Commissioners, 832 F.2d 901, 906-07 (5th Cir. 1987); Tenn. Gas Pipeline Co. v. Miss. Central Railraod Co., 164 F.Supp. 823, 827-28 (N.D. Miss. 2001). PRVWSD may be served with process of this Court by hand delivery of a copy of this complaint upon John G. Sigmon, General Manager of the PRVWSD, 115 Madison Landing Circle, Ridgeland, Mississippi 39157.

12. The Court is empowered to grant declaratory relief by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

13. This Court is empowered to grant preliminary and permanent injunctive relief by, inter alia, 28 U.S.C. § 2202 Fed. R. Civ. P. and Rule 65. This Court has personal jurisdiction over the PRVWSD because it conducts its business in the Northern Division of the Southern District of Mississippi. The PRVWSD's main office is located in Madison County, Mississippi. The warranty deeds obtained from  John Quincy Adams and Alean Adams on November 1, 1960 and Joseph L. Adams and Ruth Adams on October 5, 1960 were taken pursuant to the PRVWSD official policies and customs adopted, enacted and enforced by the PRVWSD at the PRVWSD's office building located and situated in Madison County, in the Northern Division of the United States District Court For the Southern District of Mississippi.

## III. FACTS

14. During the 1956 regular legislative session, the Mississippi Legislature enacted

Miss. Laws, Ch. 169 which created the Pearl River Industrial Commission (PRIC). The Governor was to appoint one member to PRIC from Hinds, Madison, Rankin, Leake and Scott Counties or, such counties as may elect to affiliate with PRIC. PRIC was authorized to make a survey of the region bordering the Pearl River and to investigate the possibilities of developing that area from an industrial, irrigational, and recreational standpoint, for the purpose of attracting new industries, conserving available water for irrigational and industrial purposes, protecting against pollution, and adopting a long-range plan of sewage disposal for the area. PRIC was to cooperate with the State Board of Water Commissioners. PRIC was financed in its activities from funds made available by each of the five (5) associated counties: Hinds, Rankin, Madison, Leake and Scott.

15. Pursuant to the directives of that 1956 Act, PRIC employed Lester Engineering Company of Jackson, Ebasco Services, Inc. of New York, an international engineering firm, to make a study of the engineering and economic feasibility of the proposal. The study was completed and the report by these engineers was reported to be favorable.

16. On May 5, 1958, during the regular legislative session, the Mississippi Legislature passed Senate Bill 1724 (formerly codified as Miss. Code 1942, Recompiled §§ 5956-51 et. seq.) designated as the Pearl River Valley Water Supply District Act, presently codified as Miss. Code Ann. § 51-9-101, et. seq. (Rev. 1995) which authorized the creation of Pearl River Valley Water Supply District. The Act provided that the PRIC  should petition the Chancery Court of Hinds County, Mississippi, to organize and establish PRVWSD.

17. The Act required that the PRIC Board of Water Commissioners, each county

6

(Hinds, Rankin, Madison, Leake and Scott) in the proposed PRVWSD, and every municipality of a population of 10,000 should be made parties defendant to the proceeding. It was expressly provided that it was not necessary to name landowners in the petition or to make them parties defendant. The statute directed that notice of a hearing should be given by posting and by newspaper publication in each of the counties. The notice was to be addressed to the property owners and qualified electors in the proposed PRVWSD, and command them to appear and show cause why the proposed PRVWSD should not be organized and established. If, after a hearing, the Court should enter a Decree creating the PRVWSD, an election was to be held in each of the counties of the proposed PRVWSD for a determination by the qualified electors as to whether such county would become a part of the PRVWSD. Any person interested in or aggrieved by the final order of the court, and who was a party to the proceedings in the chancery court, was given a right of appeal to the Mississippi Supreme Court within ten (10) days.

18. On September 5, 1958, the Hinds County Chancery Court, by its final decree, created and organized the PRVWSD pursuant to the authorization of the statute. The PRVWSD, embracing lands in five (5) counties was by the terms of the statute providing for its creation, intended to further the welfare of the people of the State by the construction of dams, reservoirs and other works for preserving, conserving, storing and controlling the water of the Pearl River and its tributaries for domestic, municipal, commercial, industrial, agricultural and manufacturing purposes, for recreational uses, for flood control, timber development, irrigation and pollution abatement. The Act gave the PRVWSD the power to

acquire property within or without the boundaries of the PRVWSD by purchase, lease, gift, or otherwise except by condemnation. Also, statutory authority was given to PRVWSD to acquire by condemnation property within the project area not exceeding one quarter mile from the outside line of the 300 foot above sea level contour on each side of the Pearl River. The Act authorizes the PRVWSD board of directors to determine what property was to be acquired and its determination was to be conclusive, in the absence of abuse of discretion or fraud.

19. PRVWSD and its governing board of directors were empowered to sell or lease property acquired by it for the purpose of furthering its business. Pursuant to Miuss. Code Ann. Section 51-9-121(f) (Rev. 1995), land not necessary for the PRVWSD's use was to be sold to the highest and best bid submitted and the PRVWSD board of directors shall immediately notify the former owners of the site or plot of the amount, items and conditions of the highest and best bids. Former owners had an exclusive statutory thirty (30) day right to meet the highest bid. A former landowner whose dwelling had been taken by condemnation may reacquire not exceeding forty acres of his former home site at the price paid him for it. Bonds in the amount of $25 million were issued by direction of the PRVWSD board of directors and were authorized for the purpose of providing funds to acquire property, construct and operate the projects and works and for the payment of incidental and related charges. The payment of the bonds was to be secured by the next revenues of the PRVWSD, by a two-mill ad valorem tax levy and a special two-mill tax levy. Revenues, as defined in the Act, include all funds coming into the possession of the PRVWSD.

20. For federal law purposes, PRVWSD is not an alter ego of the State of Mississippi, but is an independent, separate and distinct political subdivision, a body politic and corporate comprised of Rankin, Madison, Leake, Scott, and Hinds Counties.  Miss. Code Ann. Section 51-9-105 (Rev. 1995). PRVWSD's governmental functions and powers are prescribed by Miss. Code Ann. Section 51-9-121 (1995) and exercised by a ten (10) member board of directors.  Miss. Code Ann. § 51-9-107 (Supp. 2000). PRVWSD's funding is localized and PRVWSD does not receive and has never received an annual appropriation of money from the Mississippi Legislature or from the general fund of the State of Mississippi. PRVWSD is an independent local entity akin to a municipality, county, school district or levee board commission and is not a state agency, under Mississippi law.  Even though PRVWSD exercises governmental powers, state statutes and case law does not characterize it as an arm of the State of Mississippi, for federal law purposes or analysis. A judgment against PRVWSD is not legally mandated to be paid by the State of Mississippi or with state funds.  The funds generated by PRVWSD are not paid into the state treasury of the State of Mississippi. PRVWSD is not under the supervisory control of any state official, but has a board of directors made up of the following members appointed to the PRVWSD by the following entities: (1) Jennifer Hall - Governor Appointee, Rankin County (President); (2) Ben Evans - Madison County (Vice President); (3) Billy Cook - Governor Appointee, Leake County; (4) Jack Winstead; (5) Samuel Mitchell - Hinds County; (6) Lonnie Johnson - Governor Appointee, Scott County; (7) Tedrick Ratcliff - Mississippi Forestry Commission; (8) Kenny Windham - Rankin County; (9) Bruce Brackin - State Board of Health; (10) Phillip Crosby - Leake County

(Secretary); (11) John Pittman - Governor Appointee, Madison County; (12) Kenny Latham - Scott County; and (13) W. C. Gorden - Governor Appointee, Hinds County.

21. PRVWSD functions autonomously independent of the State of Mississippi and is concerned with local problems related to and arising from the use, operation and maintainence of the Ross Barnett Reservoir  as opposed to statewide problems.  PRVWSD is comprised of five (5) of the State of Mississippi's eighty-two (82) counties and its functions are limited to the geographical area of the five (5) counties.  PRVWSD has the authority to sue and be sued in its own name and it has the right to hold and use property.

22. Since construction of the reservoir was completed in 1966, the expenses of the PRVWSD, including debt service on the bonds, i.e., interest and principal, have been defrayed by the following revenues: (1) the two mills of the ad valorem tax collected in each of the five(5)-member counties; (2) a special tax levy by the PRVWSD board on property in the five (5)-member counties in an amount not to exceed two mills; (3) real estate development and lease payments; (4) camping, garbage, water and sewer, and miscellaneous fees; (5) interest on investments; and (6) contractual payments by the City of Jackson for drinking water. See, Hinds County v. Pearl River Valley Water Supply District, 445 So.2d 1330, 1333-34 (Miss. 1984) (for the history of the PRVWSD).

23. PRVWSD and its governing board of directors by virtue of their position of authority and trust and by operation of state statutes had the ministerial duties to administer and supervise the real property held in trust for the former landowners.  PRVWSD and its governing board of directors' decisions to lease trust land without compliance with state

statutes providing actual notice to former owners constitute PRVWSD policies and customs which possessed final authority with respect to the lands held in trust.  PRVWSD and its governing board of directors' policies, practices, customs, decisions and actions in the areas of responsibility entrusted to it by state statute involving the sale and lease of real property held in trust by PRVWSD is a policy and custom within the meaning of 42 U.S.C. § 1983 and under Monell v. Dept. of Social Services of New York, 436 U.S. 658, 694 (1978).

24. PRVWSD and its governing board of directors under the positive law of the State of Mississippi are statutorily constrained by which PRVWSD may legally dispose of, sell or lease real property held in trust subject to former landowners and their heirs at law and successors in interest. PRVWSD and its governing board of directors breached their statutory duties and obligations to provide actual written statutory notice under Miss. Code Ann. Section 51-9-121(f) (Rev. 1995) to former owners' of property interests held in trust by the PRVWSD for former landowners, their heirs at law and successors in interest.

25. PRVWSD and its governing board of directors have an official policy and custom to lease trust property without providing actual written statutory notice to former owners, their heirs at law and successors, as required by Miss. Code Ann. Section 51-9-121(f) (Rev. 1995).

26. PRVWSD and its governing board of directors have an official written or unwritten custom and policy and widespread practice of leasing and/or selling real property held in trust for former landowners, their heirs at law and successors in interest by PRVWSD and a policy of leasing and/or selling trust property without providing actual statutory written notice to the

former landowners, as required by Miss. Code Ann. Section 51-9-121(f) (Rev. 1995).

27. PRVWSD and its governing board of directors, as policy-makers have caused constitutional violations of the named plaintiffs and Class Members' federally protected rights by their policies, practices and customs to lease real property held in trust for former landowners and have intentionally deprived former landowners of their statutory right to substantive and procedural due process under the Fourteenth Amendment and the Takings Clause of the Fifth Amendment.  Under Mississippi law, PRVWSD and its governing board of directors are final policymakers for the PRVWSD and their edicts or acts represent official PRVWSD policy and custom.

28. PRVWSD and its governing board of directors, as policymakers have caused numerous constitutional violations by their conscious decisions, policies, practices and customs to lease and/or sell trust land without constitutionally adequate notice and opportunity to be heard to former landowners.

29. As a direct and proximate result of PRVWSD and its governing board of directors' written and unwritten policies, practices, customs and usage, the named plaintiffs and Class Members have suffered and been deprived of statutory notice of the impending lease or sale of their former homestead property and loss of statutory reversionary interest

30. PRVWSD and its governing board of directors' policies, procedures, customs and acts deprived plaintiffs and Class Members of property rights without procedural and substantive due process in contravention of the Fourteenth Amendment of the United States Constitution as a result of PRVWSD and its board of directors' conscious decision to disregard

the actual written notice provisions of Miss. Code Ann. Section 51-9- 21(f) (Rev. 1995) and deprived plaintiffs and Class Members of property without just compensation in contravention of the Takings Clause of the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment and the PRVWSD and its governing board of directors' actions and conduct violated the provisions of Miss. Code Ann. Section 51-9-101, et. seq. that provide certain benefits and entitlement to plaintiffs and Class Members in accordance with the statutory provisions which are protected by the federal constitutional due process and takings clause against state deprivation under color of state law.

31. PRVWSD and its governing board of directors have at all times material to this Class Action Complaint have had final policymaking authority, were responsible for PRVWSD's policies, practices and customs complained of herein which caused the plaintiffs' and Class Members' deprivations.

32. PRVWSD and its governing board of directors' policies, practices and customs as set forth in paragraphs 1-31 above constitute policy choices and establish deliberate indifference to plaintiffs and Class Members' federally protected constitutional rights.

33. By reason of their derogation of statutory trust duties trust created as aforesaid, and their violation of the those statutes of the State of Mississippi, insofar as they purport to authorize, validate or confirm sales and leases of trust lands as implemented PRVWSD and its governing board of directors are unlawful, void and unenforceable and plaintiffs and Class Members seek a declaratory judgment to the foregoing effect.

IV. <u>CLASS ACTION ALLEGATIONS</u>

13

34. Plaintiffs bring this action pursuant to the Federal Rules of Civil Procedure 23(a) and (b)(2) on their own behalf and on behalf of all other similarly situated persons who formerly owned the approximate 25,000 acres of land held in trust by the PRVWSD under the laws of the State of Mississippi. The Ross Barnett Reservoir is a 33,000 acre lake.   The members of the proposed class include:

> (i) The former owners of any site or plot of land held in trust by the PRVWSD to be rented, leased, or sold to any person, firm, or corporation for the purpose of operating recreational facilities thereon for profit, pursuant to Miss. Code Ann. Section 51-9-121(f) (Rev. 1995); and

> (ii) Any bona fide, resident householder, actually living or maintaining a residence on land taken by the district by condemnation shall have the right to repurchase not exceeding forty (40) acres of his former land or other available land from the board of directors for a price not exceeding the price paid for condemning his land.

Miss. Code Ann. Section 51-9-121(f) (Rev. 1995).

35. There are at least 200 members of this class and the class is so numerous that joinder of all members is impractical; there are questions of law or fact common to the class; the claims or defenses of the representative parties are typical of the claims of the plaintiffs and Class Members and the representative parties will fairly and adequately protect the interests of the class. The PRVWSP has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

36. In 1958, at the time the Mississippi Legislature enacted Miss. Code Ann. § 51-9-121(f) (Rev. 1995) and at the time PRWVSD obtained plaintiffs' deed for their two (2) acres and Joseph L. Adams' deed for the eighty (80) acres under threat of condemnation, both grantors, John Q. and Alean Adams and Joseph Lee and Ruth Adams were bona fide resident householders actually living and maintaining a residence on the eighty (80) acre tract and the two (2) acre of real property taken by deed, under threat of condemnation by PRVWSD.

14

Pursuant to Miss. Code Ann. Section 51-9-121(f) (Rev. 1995), the named plaintiffs and Class Members have statutory reversionary rights pursuant to Miss. Code Ann. Section 51-9-121(f) (Rev. 1995) to repurchase not exceeding forty (40) acres of their former land or other available land from the PRVWSD for a price not exceeding the price paid for condemning their land. Plaintiffs' claims are typical of the proposed class members' claims for deprivation of due process of reversionary statutory property interests without substantive and procedural due process of law including the written notice mandated by Section 51-9-121(f). The named plaintiffs will fairly and adequately protect the interests of the Class Members in this civil action for declaratory, injunctive and equitable relief including incidental monteary damages flowing from the violations and deprivations of plaintiffs and Class Members' federally protected constitutional rights.

37. Plaintiffs' attorney is qualified and able with experience in class action litigation, including votings rights, employment discrimination and lending discrimination litigation dating back to 1984. See generally, Martin v. Allain, 658 F. Supp 1183 (S.D. Miss. 1987); Thomas v. Mississippi State University, Civil Action No. 4:01cv0070 (N.D. Miss. 2001); Turnage v. Cleveland State Bank, Civil Action No. 4:13-cv-145-DMB-JMB; Thomas v. Bryant, Civil Action No. 3:18-CV-441-CWR-FKB (S.D. Miss. 2019); Crowther v. Newton County, Mississippi, Civil Action No. E87-0046(L) (S.D. Miss. 1991); Gunn v. Chickasaw County, Mississippi, 705 F.Supp. 315 (N.D. Miss. 1989); Smith v. Hosemann, 852 F.Supp.2d 757 (S.D. Miss. 2011); Ewing v. Monroe County, Mississippi, 740 F.Supp. 417 (N.D. Miss. 1990); and Turnage v. Bailey, Civil Action No. 3:18-CV-818-CWR-FKB (S.D. Miss. 2020).

38. The questions of law common to the class are whether PRVWSD's leases of trust real property formerly owned by the named plaintiffs and the Class Members without statutory

notice mandated by Miss. Code Ann. Section 51-9-121(f) (Rev. 1995) constitute a takings per se within the meaning of the Fifth Amendment and a deprivation of substantive and procedural due process right under the Fourteenth Amendment and whether the plaintiffs and Class Members are legally entitled to statutory reversionary property interests under Miss. Code Ann. § 51-9-121(f) (Rev. 1995).

39. PRVWSD and its governing board of directors have acted or refused to act, on grounds generally applicable to the class, thereby making appropriate injunctive and declaratory relief with respect to the class as a whole. Pursuant Fed. R. Civ. P. 23, plaintiffs bring this action on behalf of themselves and the Class, defined as follows:

(i) the former owners of any site or plot of land is to be rented, leased, or sold to any person, firm, or corporation for the purpose of operating recreational facilities thereon for profit pursuant to Miss. Code Ann. Section 51-9-121(f) (Rev. 1995)

(ii) Any bona fide, resident householder, actually living or maintaining a residence on land taken by the district by condemnation shall have the right to repurchase not exceeding forty (40) acres of his former land or other available land from the board of directors for a price not exceeding the price paid for condemning his land.

Miss. Code Ann. Section 51-9-121(f)(iii) (Rev. 1995).

40. Excluded from the Class are: (a) the fiduciaries of the PRVWSD trust; (b) the federal government; and (c) any Judge or Magistrate Judge presiding over this action and members of their families.

41. Numerosity: The exact number of Class Members is unknown to plaintiffs at this time, but is believed to be so numerous that joinder of all members is impractical. The precise number and identity of Class Members is unknown, but is believed to be 200 more or less former owners whose property was acquired by PRVWSD under threat of condemnation, pursuant to Miss. Code Ann. Section 51-9-121 (Rev. 1995). Moreover, upon information and belief, the exact number and identity of Class Members is ascertainable from the PRVWSD

electronic stored information and business records and the Class Members may thus be notified of the pendency of this action by first class mail, if necessary.

42. Commonality: The issues regarding liability in this case present common questions of law and fact, with answers that are common to all members of the class.  Furthermore, there are questions of law and/or fact common to the Class that predominate over any questions affecting individual Class Members. These questions are capable of classwide resolution, and answering them will resolve issues central to the validity of plaintiffs' claims. These questions include, but are not limited to, the following:

(a) whether the PRVWSD prepared and compiled business records that identify (i) each former owner of any site or plot of lot taken by the PRVWSD from and (ii) each bona fide, resident householder who was actually living or maintaining a residence on land taken by the PRVSD by name, address and parcel number?

(b) whether the PRVWSD has provided statutorily mandated notice to each former bona fide, resident householder in compliance with Miss. Code Ann. Section 51-9-101(f) (Rev. 1995) prior to the execution of a lease of the property?

(c) whether the PRVWSD has acted unconstitutionally on grounds that apply generally to both classes?

(d) whether the PRVWSD's actions and conduct involving the lease and disposition of property formerly owned by the plaintiffs and Class Members without actual notice is a custom and/or practice within the meaning of 42 U.S.C. §1983?

(e) whether both classes of former owners have been denied procedural and substantive due process of law under Miss. Code Ann. Section 51-9-121 (Rev. 1995)?

(f) whether the PRVWSD was statutorily obligated to maintain detailed business records and information concerning former landowners?

(g) whether the PRVWSD breached its trust duties?

43. The issues regarding declaratory and injunctive relief are also common to Plaintiffs and Class Members as the proposed relief will consist of: (1) a declaration that each former owner of real property acquired by the PRVWSD pursuant to Miss. Code Ann. Section 51-9-121 (Rev. 1995) has statutory reversionary rights and is statutorily entitled to actual notice prior to the sale and lease of property; (2) an order from this Court directing and enjoining the PRVWSD to comply with the notice provisions of Miss. Code Ann. Section 51-9-121 (Rev. 1995); (3) an order enjoining the PRVWSD to comply with the administration of its trust duties to the former landowners and to compile a list of the name and address of each former landowner and the date of each deed; (4) enter an Order declaring that the PRVWSD has breached its statutory trust duties and obligations to the former landowners; and (5) enter an order of this Court declaring that the PRVWSD's actions and conduct constitute an ongoing violation of the Plaintiffs and Class Members' federally protected rights under the federal due process and the takings clause of the United States Constitution.

44. Typicality: Plaintiffs' claims are typical of the claims of the Class Members, as all claims arise out of the common course of conduct of the PRVWSD's breach of its statutory duties to provide actual written notice to the former landowners pursuant to Miss. Code Ann. Section 51-9-121 (Rev. 1995).

45. PRVWSD does not have any defenses unique to plaintiffs' claims that would make plaintiffs' claims atypical of the remainder of the class.

46. Adequate Representation: Plaintiffs are adequate representatives of the Class Members and will fairly and adequately protect the interests of the Class Members. Plaintiffs have retained counsel with 38 years of experience in federal court class action litigation and numerous state and federal cases involving due process and takings per se claims against

governmental defendant involving state action under 42 U.S.C. Section 1983. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class Members and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests adverse or antagonistic to or in conflict with the interests of the Class Members.

47. Plaintiffs will fairly and adequately represent and protect the interests of all Class Members.

48. The PRVWSD has no unique defenses against the Plaintiffs and Class Members that would interfere with the Plaintiffs' representation of the Class Members.

## V. Rules 23(b)(1) Requirements

49. The requirements of Rule 23(b)(1)(A) are satisfied because the prosecution of separate actions by Class Members would create a risk of establishing incompatible standards of conduct for the named Defendants.

50. The requirements of Rule 23(b)(1)(B) are satisfied because adjudications of these claims by individual Class Members would, as a practical matter, be dispositive of the interest of the other members not parties to the actions, or substantially impair or impede the ability of other Class Members to protect their interests.

## VI. Rule 23(b)(2) Requirements

51. Class action status is also warranted under Rule 23(b)(2) because the named defendants has acted or refused to act on grounds generally applicable to all Class Members, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief including incidental money damages flowing from the declaratory and injunctive relief with respect to all Class Members as a whole.

52. Plaintiffs and the Class Members seek an injunction ordering and directing the PRVWSD to compile a list of each former landowner who executed a Deed to the PRVWSD,

by Grantor name, date of instrument, by Township, Range and Section and the number of acres coneyed. The PRVWSD's statutory failure to provide actual notice involved in the administration of trust property "is such that it can be enjoined or declared unlawful only as to all of the class members or to none of them." Wal-Mart Stores, Inc. v. Dukes, 564 U. S. 338, 360 (2011). This class action case can be certified for class treatment under Rule 23(b)(2) because the relief of enjoining the PRVWSD to provide statutory notice to former landowners pursuant to Miss. Code Ann. Section 51-9-121 (Rev. 1995) is in nature injunctive relief to the Class Members as a whole.

VII. Rule 23(b)3) Requirements

53. If the Class is not certified under Rule 23(b)(1) or (b)(2) then certification under (b)(3) is appropriate because questions of law or fact common to all Class Members predominate over any questions affecting only individual members. The common issues of law or fact that predominate over any questions affecting only individual members include:

(a) whether the PRVWSD prepared and compiled business records that identify each former owner and each former bona fide, resident householder who was actually living or maintaining a residence on land taken by the PRVSD by name, address and parcel numbers?

(b) whether the PRVWSD has provided statutorily mandated notice to each former bona fide, resident householder in compliance with Miss. Code Ann. Section 51-9-101(f) (Rev. 1995) prior to the execution of a lease or sale of each tract of property?

(c) whether the PRVWSD has acted unconstitutionally on grounds that apply generally to both classes?

(d) whether the PRVWSD's actions and conduct involving the lease, sale and disposition of trust property formerly owned by the plaintiffs and Class Members comports with federal law?

(e) whether both classes of former owners have been denied procedural and substantive due process of law by the PRVWSD?

(f) whether the PRVWSD breached its statutorily obligations to maintain detailed business records and contact information concerning former landowners

to provide statutory written notice?

54. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

A. Individual class members do not have an interest in controlling the prosecution of these claims in individual actions rather than as a class action because the equitable relief sought by any Class member will either inure to the benefit of the Class Members equally;

B. Individual Class members also do not have an interest in controlling the prosecution of these claims because the monetary relief that they could seek in any individual action is identical to the relief that is being sought on their behalf herein;

C. At the time that the present litigation was originally filed, there was no other litigation by any other Class Members concerning the issues raised in this litigation;

D. This litigation is properly concentrated in this forum, which is where the PRVWSD is headquartered; and

E. There are no difficulties managing this case as a class action.

VIII. <u>Causes of Action</u>

A.   First Cause of Action: Deprivation Of Procedural And Substantive Due Process Under The Fourteenth Amendment To The United States Constitution

55. Plaintiffs restate and incorporate herein by reference all of the allegations contained

in the above-numbered paragraphs.

56. The hereinabove described actions and conduct of the PRVWSD constitute a deprivation of procedural and substantive due process guaranteed by the due process clause and the takings clause of the United States Constitution under the Fifth and Fourteenth Amendments.

57. Title 42 U.S.C. § 1983 imposes liability on persons acting under color of state law that deprives another of rights or privileges secured by the Constitution or the laws of the United States. To act under color of state law for § 1983 purposes does not require a private corporate defendant to be an officer of the state.

B.      Second Cause of Action: A Per Se Takings Clause of the Fifth Through The Fourteenth Amendment

58. Plaintiffs and the Class Members restate and incorporate herein by reference all of the allegations contained in the above-numbered paragraphs 1-58.

59. The Takings Clause of the United States Constitution states "private property [shall not] be taken for public use, without just compensation." U. S. Const. Amend. V. The Takings Clause of the United States Constitution is binding on the states through the Fourteenth Amendment.

60. Plaintiffs and the Class Members have vested property rights to their former land to pursuant to and under federal and Mississippi law, namely Miss. Code Ann. Section 51-9-121 (Rev. 1995).

61.The PRVWSD's policies, procedures and practices in the sale and lease of the plaintiffs and Class Members' statutory reversionary property rights under Miss. Code Ann.

Section 51-9-121 (Rev. 1995) have substantially and materially impaired and diminished the vested property rights of the Plaintiffs and Class Members.

62. The PRVWSD's policies, procedures and practices in the sale and lease of the plaintiffs and Class Members' statutory reversionary property rights under Miss. Code Ann. Section 51-9-121 (Rev. 1995) constitute and amount to a takings per se of the Plaintiffs and Class Members' interest without just compensation, in violation of the Fifth Amendment to the United States Constitution.

63. Through the of Plaintiffs and Class Members' without just compensation and violated Plaintiffs and the Class Members' "due process" and "takings" clause rights under the Fifth and Fourteenth Amendments to the United States Constitution. Horne v. Department of Agriculture, 133 S. Ct 2419, 2428 (2015).

64. The Takings Clause of the Fifth Amendment through the Fourteenth Amendment prohibits states from taking property for public use without just compensation

65. Core common law property rights pre-date the United States and the Mississippi Constitution are protected by the Takings Clause.

C.     Third Cause of Action: Derogation of Trust

66. At the time PRVWSD received the over 30,000 acres of land, the parcels were impressed with an express/constructive trust irrevocably and in perpetuity for the use and benefit of the plaintiffs and Class Members, and their respective heirs at law and other sucessors. The sales, leases and disposals of trust lands by PRVWSD and its governing board of directors, violated the terms of the trust and were in gross derogation of the rights vested in plaintiffs and Class Members.

67. PRVWSD and its governing board of directors have at all times relevant hereto had the duties:

(a) to deal with, manage and supervise the properties held by them in trust in utmost good faith and fidelity towards plaintiffs and Class Members;

(b) to make no sales, leases, or other alienations of such properties except upon authority of law (which authority has never been lawfully obtained);

(c) to immediately notify plaintiffs and Class Members, as former owners of the site or plot of land, the sale or lease amount, terms and conditions of the highest bid so the former owners of the site or plot shall have the exclusive right and option for thirty (30) days to rent, lease or purchase the site or plot of land;

(d) to grant to all bona fide resident householders the statutory right to repurchase not exceeding forty (40) acres of his former land or other land available for a price not exceeding the price paid for condemning his land;

(e) wherever property held in trust has been unlawfully sold or otherwise alienated, to set aside, restore to or otherwise make available for the use and benefits of the statutory beneficiaries, here plaintiffs and Class Members such real and/or fund of money as may have a value sufficient to make up for that the benefit of which the beneficiaries would otherwise have had; and

(f) generally, to compensate the statutory beneficiaries and make them whole for any and all losses sustained as a result of the PRVWSD's mismanagement or other breach of its fiduciary duties. For breach of each of the aforesaid duties, plaintiffs and Class Members assert a claim for monetary compensation against the PRVWSD and its governing board of directors.

68. As described above, PRVWSD and its governing board of directors, acting under color of state law, failed to respect the trust to which the former owners' lands were subject

and in which the lands were held. Accordingly, plaintiffs and Class Members seek redress and assert claims against PRVWSD and its governing board of directors for violation of federally protected rights created and secured to plaintiffs and Class Members by Miss. Code Ann. 51-9-12 (f) (Rev. 1995) and the common law of trusts as the same has been received, accepted and placed in full force and effect by the PRVWSD and its governing board of directors.

69. By their past, present and future deprivations of plaintiffs and Class Members' statutory reversionary rights to the use and benefit of the land held in trust for former landowners, PRVWSD and its governing board of directors have acted to deprive plaintiffs and Class Members of protected, vested property interests, to-wit: their interests as beneficiaries of the trusts created as aforesaid, without substantive and procedural due process of law and in violation of the Takings Clause. In this manner and in other ways to be shown at the trial of this action, PRVWSD and its governing board of directors have denied the plaintiffs' and Class Members' rights protected under the Fifth and Fourteenth Amendments to the Constitution of the United States. Plaintiffs accordingly assert a claim against PRVWSD and its governing board of directors under each of these constitutional provisions. In addition, Plaintiffs and Class Members assert a claim against PRVWSD and its governing board of directors under 42 U.S.C. §1983.

70. The Mississippi Legislature by state statute extended to all former landowners, their heirs at law and successors in interest within PRVWSD including plaintiffs and Class Members statutory reversionary rights in trust for the use and benefit of the former landowners and their heirs at law and successors in interest. After the Mississippi Legislature statutorily created reversionary property interests, the PRVWSD and its governing board of directors, as described more fully hereinabove, arbitrarily, unreasonably and without due process of law

deprived plaintiffs and Class Members of their statutory reversionary property rights, without actual notice. By having deprived plaintiffs and Class Members of their statutory reversionary property rights and entitlements, PRVWSD and its governing board of directors have denied Plaintiffs and Class Members rights protected under the Fifth and Fourteenth Amendments to the Constitution of the United States.  Plaintiffs accordingly assert a claim against PRVWSD and its governing board of directors under each of these constitutional provisions.

D.      Fourth Cause Of Action: Taking Without Just Compensation

71. Any and all actions of PRVWSD through which the former landowners' land was sold, leased or otherwise removed from the trust described hereinabove constitute a taking of the property rights and interests of plaintiffs and Class Members without due compensation in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States and of Article 3, Section 17 of the Mississippi Constitution of 1890. For redress, plaintiffs and Class Members assert a claim against PRVWSD and its governing board of directors thereunder.

VII. RELIEF

72. Sitting as a Court of Equity, this Court has broad and flexible powers to formulate and decree remedies appropriate to vindicate the rights of plaintiffs and the Class Members and also to promote the best interests thereof, all consistent with the public interest and the legitimate private interests of persons who are or may be affected.

73. Plaintiffs and Class Members are entitled to be made whole. One way in which this may be done, and which the Court may order PRVWSD to do, would be the establishment of a fund, for the use and benefit of plaintiffs and the Class Members, having such amount of money or value contained therein as may reasonably be necessary to compensate, reimburse

and make restitution to each of the former landowners or their heirs at law and successors in interest for all their real property value each would have received from the date of sale, lease or disposal until the present if each former landowner had been receiving the income and value from their respective lands, if such lands had been subjected to such reasonable use and prudent management (which would have included utilizing said lands at their highest and best income producing use) as would have been required of trustees holding properties in trust and as would have produced maximum levels of annual income, plus interest from the year in which such income would have been received, compounded annually.

74. In the alternative and/or in combination, PRVWSD and its governing board of directors should be ordered and directed to acquire and make available for the use and benefit of plaintiffs and Class Members appropriate lands of the same value as the original lands.

75. In the alternative and/or in combination, all PRVWSD trust lands which are now held by PRVWSD should be declared subject to the aforesaid trust.

76. Plaintiffs and Class Members are aware that some of the lands may be  claimed by third parties who acquired the lands with actual and constructive notice of plaintiffs' statutory reversionary and statutory rights. Many of such third parties have made valuable improvements on said lands, but purchased the trust land with actual and constructive notice of plaintiffs' statutory reversionary interests to such lands.  With actual and constructive knowledge of plaintiffs and Class Members statutory reversionary rights, many mortgage lenders may have advanced money against the security of such lands. With actual and constructive knowledge, many  title insurance companies have written policies of title insurance on PRVWSD trust lands.

77. With actual and constructive notice and knowledge of plaintiffs and Class Members' statutory reversionary rights, attorneys have rendered opinions respecting the titles to

27

PRVWSD trust lands. Plaintiffs are aware that the above described facts and circumstances would entitle them to a decree declaring all PRVWSD trust lands, to be held in trust accordance with Miss. Code 51-9-121(f) (Rev. 1995). Sitting as a Court of Equity, however, this Court has the power, and indeed, the responsibility to make plaintiffs and Class Members whole. There are many ways in which plaintiffs and Class Members may be compensated for their past losses and protected and made whole for the future including a decree that the trust land be returned to the former landowners or their heirs at law and successors in interest. PRVWSD and its governing board of directors have caused the losses and deprivation of federal constitution rights suffered by the plaintiffs and Class Members. Plaintiffs and Class Members hereinafter pray for adequate legal and equitable remedies.

78. Plaintiffs and Class Members have suggested herein, and below prayed for, a variety of different forms of relief. First and foremost, plaintiffs and Class Members seek and claim that they are entitled to the establishment of a trust fund formed and computed as described hereinabove or an order for lump sum in an amount necessary to make whole plaintiffs and Class Members. Nevertheless, plaintiffs and Class Members suggest that provisions of appropriate redress, remedy, and relief of and from the unlawful and unconstitutional conditions and circumstances described above may require a combination of two or more of the various forms of relief suggested here and for which prayer is hereinafter made, or the development of still other forms of relief not mentioned here and the decreeing and implementation of same either alone or in conjunction with specific forms of relief suggested herein. All suggestions for and prayers for relief should be construed in this light and should be treated as individual prayers for relief, joint prayers, or as components forming part or the whole of an overall decree effectively making plaintiffs and Class Members whole and protecting and vindicating their statutory reversionary rights.

28

## VIII. PRAYER

WHEREFORE, premises considered, plaintiffs and Class Members pray for the following:

(A) that this action be certified as a class action and that plaintiffs and Class Members and their undersigned counsel of record be appointed as class counsel of the Class Members as defined hereinabove;

(B) that, after a full hearing and trial of the merits of this action, the Court will grant in favor of plaintiffs and Class Members a declaratory judgment which in substance will declare and adjudicate:

(1) that, for reasons described hereinabove, the sales, leases and disposals of PRVWSD trust lands made by PRVWSD and its governing board of directors were unconstitutional, illegal and without authority of law; provided, however, that inasmuch as some of these lands may be and/or are now privately claimed by persons who had actual and constructive notice and knowledge of plaintiffs and Class Members' statutory reversionary and homestead rights in and to such trust lands, plaintiffs and Class Members seek as relief monetary compensation for their losses and deprivations;

(2) that, as described more particularly hereinabove, PRVWSD and its governing board of directors and their predecessors in office have deprived and are depriving plaintiffs and Class Members of statutory reversionary rights in which they have vested beneficial interest without substantive and procedural due process of law under the Fourteenth Amendment.

(3) that, under the facts and circumstances described more particularly hereinabove, PRVWSD's and its governing board of directors' and their predecessors in office actions and conduct amount to a taking without just compensation to plaintiffs and Class Members and deprived them of rights protected and secured to them by the takings clauses of the Fifth and Fourteenth Amendments;

29

(4) that, in addition, PRVWSD and its governing board of directors and their successors in office, their agents, servants and employees, and all persons acting in concert with them, jointly and severally, be enjoined and directed to take such actions as may be necessary and appropriate to

(a) set aside and make available for the use and benefit of plaintiffs and Class Members a monetary fund of such value and in such amount as may reasonably be necessary.

(i) to compensate and make whole plaintiffs and Class Members for all monetary damages they would have received from the sale, lease or disposal of trust land from the date of sale, lease or disposal until the present if they had been receiving the income and value from their respective trust if such lands had been subjected to such prudent use and reasonable management (which would have included placing said lands in their highest and best income producing use) as would have been required of trustees holding properties in trust and as would have produced maximum levels of annual income, and

(ii) to compensate plaintiffs and Class Members for the interest that would have been earned on the funds computed as above described in (b) above had said funds been received annually and immediately thereafter invested at the best rate of interest then available, and further, had said fund remained so invested continuously until this time, with interest compounded, annually;

(b) acquire, set aside and make available for the use and benefit of plaintiffs and Class Members in compliance with the terms and provisions of Miss. Code Ann. Section 51-9-122(f) (Rev. 1995) take any and all other steps or actions as may be reasonably necessary or appropriate to

(i) make available to plaintiffs and Class Members properties of value equivalent to the current fair market value of the properties unlawfully lease or sold as aforesaid, or

(ii) make available to plaintiffs and Class Members monetary damages as may be equitable and just, or

(iii) eliminate and compensate and for the future guarantee and protect plaintiffs and Class Members against the above described takings and deprivations of their rights to due process of law and to the equal protection of the laws under the Fifth and Fourteenth Amendments;

(5) develop, prepare and file with the Court, and subject to confirmation and approval by the Court, a plan for the orderly implementation of the declaratory, injunctive and equitable incidental monetary damage relief otherwise granted;

(C) that plaintiffs and Class Members be granted general relief; that is, that plaintiffs and Class Members be granted all relief to which they are entitled under the law and the facts, whether such relief in whole or in part has been specifically demanded herein or not;

(D) that the Court will fashion such other orders, injunctions, decrees and remedies as may be equitable and just to the end that the rights of Plaintiffs and Class Memberes, as aforesaid, will be vindicated, protected and guaranteed consistent with the public interest and the orderly administration of equity and justice;

(E) that the Court will retain jurisdiction for such period of time after final adjudication of the merits hereof as may be necessary and appropriate to assure that the orders and decrees of the Court are fully implemented;

(F) that the Court will award to plaintiffs and tax against the PRVWSD all Court costs, plaintiffs' reasonable attorneys' fees and other legal expenses.

SO COMPLAINED this the 15th day of July, 2020.

Respectfully submitted,
John Q. Adamns, et. al., Plaintiffs

31

By:   <u>s/Ellis Turnage</u>
        ELLIS TURNAGE, Attorney for Plaintiffs


OF COUNSEL:

ELLIS TURNAGE, MSB #8131
TURNAGE LAW OFFICE
108 North Pearman Avenue
Post Office Box 216
Cleveland, Mississippi 38732-0216
Tel: (662) 843-2811
Fax: (662) 843-6133